BURSOR & FISHER P.A.

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
www.bursor.com

ALEC M. LESLIE
Tel: 646.837.7150
Fax: 212.989.9163
aleslie@bursor.com

February 12, 2025

***Via ECF***

Hon. Margo K. Brodie
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***Anisimova v. Village Practice Management Company, LLC d/b/a CityMD***

Dear Judge Brodie:

I represent Plaintiff Sofiya Anisimova ("Plaintiff") in the above-captioned matter. I write pursuant to Section 3(A) of Your Honor's Individual Practices and Rules and in response to Defendant Village Practice Management Company, LLC d/b/a CityMD's ("Defendant" or "CityMD") February 5, 2025 letter seeking a pre-motion conference (the "Letter") (Doc. 17). Plaintiff will oppose Defendant's motion.

## I. Brief Factual Background

This is a putative class action brought on behalf of all LinkedIn users who live in the United States and who scheduled an urgent care medical appointment through Defendant's website, www.citymd.com. Complaint ¶ 1 (Doc. 1). The basis for the lawsuit is that, unbeknownst to Plaintiff and members of the putative class, Defendant assisted LinkedIn Corporation ("LinkedIn") in intercepting sensitive and confidential communications, including the location and time of their medical appointments, their gender, and the type of medical appointments they were seeking treatment for. *Id.* ¶ 4. Defendant never disclosed that it was sharing data related to its patients' medical appointments with third parties. Nor did Plaintiff or members of the putative class consent to such. *Id.*

Plaintiff is a Brooklyn resident who, at all relevant times, maintained an active LinkedIn account when booking medical appointments on Defendant's website. *Id.* ¶ 7. When booking her appointment, Plaintiff selected a CityMD location, a time, who she was booking an appointment for, her gender, and why she was booking the appointment. *Id.* ¶ 8. Unbeknownst to Plaintiff, Defendant assisted LinkedIn in tracking her private activity on the Website using the LinkedIn Insight Tag. Defendant installed this software on its website to assist LinkedIn in tracking Plaintiff and intercepting her communications with Defendant, including communications that contained confidential, health-related information concerning her medical appointment. *Id.* Neither Defendant nor LinkedIn received consent from Plaintiff to track or sell her confidential and protected health data to advertisers. *Id.*

The crux of Defendant's Letter is that, according to Defendant, Plaintiff must publicly disclose in her complaint the specific reason she booked an appointment and the specific treatment she was seeking. Letter at 1-2. But that is not the law, and requiring Plaintiff to do so would contravene the very purpose of this lawsuit, which is based on the disclosure of sensitive medical information without Plaintiff's consent.

Plaintiff and Class members are entitled to privacy in seeking medical treatment. Defendant's system of surreptitiously tracking, recording, and disclosing its patients' confidential communications, personally identifiable information, and protected health information is an egregious invasion of privacy, violates federal law, and a breach of Defendant's duty of confidentiality as a medical provider.

## II. Defendant Violated the Electronic Communications Privacy Act ("ECPA")

Defendant first argues Plaintiff's ECPA claim should be dismissed because "the information Plaintiff allegedly entered or selected on the Website does not involve 'the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.'" Letter at 2 (quoting HIPAA). That is wrong. "Confidential, health-related information" concerning "the types of medical appointments [Plaintiff and Class members] were seeking treatment for" is squarely protected by HIPAA. Complaint ¶¶ 4, 8, 15, 25. Plaintiff further alleges "Defendant and LinkedIn monetized this data for targeted advertising purposes." Compl. ¶ 54; *see also id.* ¶¶ 56-57 ("These interceptions also included the li_sugr and lms_ads cookies, which LinkedIn utilizes to identify its account holders for targeted advertising. LinkedIn incorporated the information it intercepted from the CityMD Website into its marketing tools to fuel its targeted advertising service.").

For this reason, courts have overwhelmingly rejected motions to dismiss under similar circumstances. *See Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *7 (S.D.N.Y. July 30, 2024) ("With all reasonable inferences drawn in its favor, the FAC plausibly alleges that Mount Sinai knowingly disclosed individually identifiable health information to Pixel Information Recipients and thereby violated HIPAA."); *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) ("The Court finds Cooper instructive. Like Mount Sinai, Garnet installed a Pixel (the Facebook Tracking Pixel) as well as the Facebook Conversions Application Programming Interface ("Conversion API") on its website. (Compl ¶¶ 3, 4.) Like Mount Sinai, Garnet "routinely sent Facebook [and Google] individually identifiable information that Plaintiffs had entered into [Garnet Health's] Web Properties" in violation of applicable law such as HIPAA. *Cooper*, 2024 WL 3586357 *8. According to the Complaint, this information included 'medical treatment sought, the particular health condition, and the fact that the individual attempted to or did book a medical appointment.'"); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) ("Plaintiffs have alleged that Defendant configured the Pixel to collect and disclose, among other things, that a specific user booked an appointment with a specific healthcare provider and the search terms that the user entered to find that provider. That information, through the c_user cookie, would be associated with a particular Facebook user, that is, with a person's real-world identity. They have further alleged that Defendant disclosed this information to enhance its marketing efforts. Accordingly, Plaintiffs have plausibly alleged that Defendant's purpose was to commit an act that is punishable as a

crime under 42 U.S.C. § 1320d-6: knowingly disclosing IIHI without authorization for marketing purposes.") (internal citations omitted); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, *3 (N.D. Ill. Dec. 11, 2023) (denying motion to dismiss where Plaintiff alleged that defendant knowingly transmitted metadata for the purpose of financial gain and that such allegations were "sufficient to invoke the HIPAA [criminal or tortious] exception-to-the-party exception" for a Wiretap Claim); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception. This case involves not only the disclosure of private information, but also the disclosure of private health information as between a healthcare provider and a patient—which triggers HIPAA—for the unauthorized purpose of marketing services.").

Defendant's argument that Plaintiff "failed to allege that she was targeted with information keyed to her specific medical condition or treatment" misunderstands the law and facts at hand. Letter at 2. The court in *Cooper* held the plaintiffs' allegations that they "received targeted ads on Facebook keyed to their confidential health conditions … make plausible that at least some information transmitted was individually identifiable health information." *Cooper*, 2024 WL 3586357, at *7. But unlike in *Cooper*, Plaintiff's complaint here includes screenshots of website code showing exactly what information is transmitted to LinkedIn, and how it is being transmitted. *See* Complaint ¶ 53 (Figures 1-5); *compare with Cooper et al v. Mount Sinai Health System, Inc.*, Case 1:23-cv-09485-PAE, Doc. 16 (S.D.N.Y.) (First Amended Complaint). Based on the website code depicted, there is no doubt that Defendant transmitted individually identifiable health information to LinkedIn. Plaintiff's allegations are more than plausible.

**III. Plaintiff States a Claim for Breach of Fiduciary Duty/Confidentiality**

Defendant argues Plaintiff's breach of fiduciary duty/confidentiality claims fails because "[t]o put forth such a claim, a plaintiff needs to allege that specific information relating to a treatment rendered or diagnosis made was disclosed without her consent." Letter at 2. To the contrary, Plaintiff alleges Defendant disclosed "the type of medical appointment [she] was seeking treatment for." Complaint ¶ 55. Plaintiff further alleges she did not consent to such disclosure. *Id.* ¶ 58 ("Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant or LinkedIn to intercept her confidential health information.").

Respectfully,
*/s/ Alec M. Leslie*
Alec M. Leslie